**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| OLD TOWN PIZZA OF LOMBARD, INC., an Illinois corporation, and MEDICAL & CHIROPRACTIC CLINIC, INC., a Florida corporation, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) ) ) ) | Civil Action No. |
| | ) | **CLASS ACTION** |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| MP BUSINESS DOCTORS LLC a/k/a MP FACE MASK LLC, a Delaware limited liability company, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs, OLD TOWN PIZZA OF LOMBARD, INC. and MEDICAL & CHIROPRACTIC CLINIC, INC. ("Plaintiffs"), through their attorneys, bring this action on behalf of themselves and all others similarly situated and, except as to those allegations pertaining to Plaintiffs or their attorneys, which allegations are based upon personal knowledge, allege the following upon information and belief against Defendant, MP BUSINESS DOCTORS LLC a/k/a MP FACE MASK LLC. ("Defendant"):

## PRELIMINARY STATEMENT

1.      This case challenges Defendant's practice of sending "unsolicited advertisements" by facsimile.

2.      The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JPFA"), 47 USC § 227 (hereafter "TCPA" or the "Act"), and the regulations promulgated under the Act, prohibit a person or entity from faxing or having an agent

fax advertisements without the recipient's prior express invitation or permission. The TCPA provides a private right of action and provides statutory damages of $500 per violation.

3.    On or about April 3, 2020, Defendant sent Plaintiff, Old Town Pizza of Lombard, Inc., an unsolicited fax advertisement in violation of the TCPA ("the Fax"), a true and correct copy of which is attached hereto as Exhibit A and made a part hereof. On or about April 2, 2020, April 9, 2020 July 7, 2020, and July 25, 2020, Defendant sent Plaintiff, Medical & Chiropractic Clinic, Inc., four (4) faxes, true and correct copies of which are attached hereto as Exhibit B and made a part hereof.  The Faxes offer different types of face masks for purchase. (Exhibits A and B).

4.    Upon information and belief, Defendant has sent, and continues to send, the Faxes and other facsimile transmissions of unsolicited advertisements to Plaintiffs and the Class in violation of the TCPA.

5.    Unsolicited faxes damage their recipients. The recipient of an unsolicited fax (junk fax) loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. Unsolicited faxes intrude into the recipient's seclusion, violates the recipient's right to privacy, occupy fax lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

6.    Plaintiffs, on behalf of themselves and all others similarly situated, bring this case as a class action asserting claims against Defendant under the TCPA. Plaintiffs seek to certify a class which were sent the Faxes and other unsolicited fax advertisements that were sent without prior express invitation or permission and without compliant opt-out language (to the extent the

affirmative defense of established business relationship is alleged). Plaintiffs seek statutory damages for each violation of the TCPA, injunctive relief, and attorneys' fees (under the conversion count).

7.      Plaintiffs are informed and believe, and upon such information and belief aver, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the TCPA. This action seeks relief expressly authorized by the TCPA: (i) injunctive relief enjoining Defendant, its employees, agents, representatives, contractors, and affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the TCPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act in the event willfulness in violating the TCPA is shown.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

9.      This Court has personal jurisdiction over Defendant because Defendant transacts business within this judicial district, have made contacts within this judicial district, and/or has committed tortious acts within this judicial district.

## PARTIES

10.      Plaintiff, OLD TOWN PIZZA OF LOMBARD, INC. ("Old Town Pizza"), is an Illinois corporation.

11.     Plaintiff, MEDICAL & CHIROPRACTIC CLINIC, INC. ("Medical & Chiro"), is a Florida corporation.

12.     On information and belief, Defendant, MP BUSINESS DOCTORS LLC, is a Delaware limited liability company with a principal place of business in Lake Elsinore, California.  MP Business Doctors a/k/a MP Face Mask "provides the highest quality CE and FDA certified facemask…"[1]

## FACTS

13.     On information and belief, Defendant is a for-profit company that sells personal protection equipment, mainly face masks.

14.     On or about August 3, 2020, Defendant sent an unsolicited facsimile to Plaintiff Old Town Pizza using a telephone facsimile machine, computer, or other device.  *See* Exhibit A. On or about August 2, 2020 and August 9, 2020, Defendant two unsolicited facsimiles to Plaintiff Medical & Chiro using a telephone facsimile machine, computer, or other device.  *See* Exhibits B-1; B-2.

15.     These three Faxes are very similar and offer "…4 options of Certified Face Masks to choose from…" and further state, in part, the following:

"Confirmed Production, Orders Ready to Ship.  *Stock up and Help Prevent the spread of Coronavirus!*...

Option A:  Standard Face Mask with comfort ear loop "BEF >90%"
Option B:  Surgical Face Mask with comfort ear loop "BFE >95%"
Option C:  KN95 Face Mask without Valve with comfort ear loop *BFE >95%"
Option D:  KN95 Face Mask with Valve with comfort ear loop *BFE >95%"

√ All MP Face Masks are <u>FDA/CE Certified</u> to meet health, safety, & environmental protection Standards.  Don't be fooled by unsafe counterfeit masks!
√ Production capability of 300,000 units a day for Standard & Surgical Masks, and 600,000 units per day for KN 95 Face masks!!!"

---

[1] Information obtained from www.mpfacemask.com, last visited November 19, 2020.

4

Exhibit A; Exhibits B1, B2.

16.     On or about July 7, 2020, Defendant sent an unsolicited facsimile to Plaintiff

Medical & Chiro using a telephone facsimile machine, computer, or other device. *See* Exhibit B-

3.

17.     The on or about July 7, 2020 Fax states, in part, the following:

"**NEWLY ARRIVED STOCK IN LA** ! Ready to Ship NOW! *Stock up and Help Prevent the spread of Coronavirus*!..."

"…1,000 Surgical Masks: $450!  500 KN95 no. $880!  Order ships same day!"

"…We have greatly reduced our US Stock price due to Our Increased Purchase Power and newly arrived container orders!  We have over 3 million units of face masks just arrived In Los Angeles Warehouse!  **Here are the Promotional deals:**…"

"…We can beat any competitors' price by 15%, if you will provide any of your recent purchase order with a lower paid price, we will give 100 Free Surgical Face Masks!  No matter if you buy from us or not!!..."

Exhibit B-3.

18.     On or about July 15, 2020, Defendant sent an unsolicited facsimile to Plaintiff

Medical & Chiro using a telephone facsimile machine, computer, or other device. *See* Exhibit B-

4.

19.     The on or about July 15, 2020 Fax states, in part, the following:

"**LOWEST PRICES IN THE INDUSTRY!  PASS THE SAVINGS TO YOU!**"

"**NEWLY ARRIVED STOCK IN LA** ! Ready to Ship NOW! *Stock up and Help Prevent the spread of Coronavirus!*..."

"…2,000 Surgical Masks: $780!  500 KN95 no. $880!  Order ships same day!"

"…We have greatly reduced our US Stock price due to Our Increased Purchase Power and newly arrived container orders!  We have over 3 million units of face masks just arrived In Los Angeles Warehouse!  **Here are the Promotional deals: EXPIRES 7-31-2020**…"

"…Place your order today and replenish your supply to meet your customers' needs!  Please visit our website at www.mpfacemask.com..."

Exhibit B-4.

20.     The Faxes all advertise the commercial availability and quality of Defendant's personal protection equipment, most specifically, face masks.

21.     Plaintiffs did not give "prior express invitation or permission" to Defendant to send the Fax.

22.     On information and belief, Defendant faxed the same and other unsolicited facsimile advertisements without prior express permission or invitation and without compliant opt-out language to Plaintiffs and at least 40 other recipients.

23.     There is no reasonable means for Plaintiffs (or any other class member) to avoid receiving unauthorized fax advertisements. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

24.     Defendant's facsimiles attached as Exhibits A and B do not display a proper opt-out notice as required by 47 C.F.R. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4).

## CLASS ACTION ALLEGATIONS

25.     In accordance with Fed. R. Civ. P. 23(b)(3), Plaintiffs bring this class action pursuant to the TCPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant, (3) from whom Defendant did not obtain "prior express invitation or permission" to send fax advertisements, (4) with whom Defendant did not have an established business relationship, and/or (5) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4).

Excluded from the Class are Defendant, its officers, directors, shareholders, employees and agents, and members of the Judiciary. Plaintiffs seek to certify a class which includes but is not

limited to the fax advertisements sent to Plaintiffs. Plaintiffs reserve the right to amend the class definition upon completion of class certification discovery.

26.     Class Size (Fed. R. Civ. P. 23(a)(1)): Plaintiffs are informed and believe, and upon such information and belief aver, that the number of persons and entities of the Plaintiffs Class is numerous and joinder of all members is impracticable. Plaintiffs are informed and believe, and upon such information and belief aver, that the number of class members is at least forty.  The precise number of class members and their identities are unknown to Plaintiffs but will be obtained from Defendant's records or the records of third parties.

27.     Commonality (Fed. R. Civ. P. 23(a)(2)):  Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

(a)     Whether the Faxes and other faxes sent during the class period constitute advertisements under the TCPA and its implementing regulations;

(b)     Whether Defendant meets the definition of "sender" for direct TCPA liability;

(c)     Whether Defendant had prior express invitation or permission to send Plaintiffs and the class fax advertisements;

(d)     Whether the Faxes and other faxes sent during the class period contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

(e)     Whether Defendant should be enjoined from faxing advertisements in the future;

7

(f)     Whether Plaintiffs and the other members of the class are entitled to statutory damages; and

(g)     Whether the Court should award treble damages.

28.     Typicality (Fed. R. Civ. P. 23(a)(3)):  Plaintiffs' claims are typical of the claims of all class members. Plaintiffs received the same or other faxes as the fax advertisements sent by or on behalf of Defendant during the Class Period.  Plaintiffs are making the same claims and seeking the same relief for themselves and all class members based upon the same federal statute.  Defendant has acted in the same or in a similar manner with respect to Plaintiffs and all the class members by sending Plaintiffs and each member of the class the same or other faxes or faxes which did not contain the proper opt-out language or were sent without prior express invitation or permission.

29.     Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4)):  Plaintiffs will fairly and adequately represent and protect the interests of the class. Plaintiffs are interested in this matter, have no conflicts, and have retained experienced class counsel to represent the class.

30.     Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)):  Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a)     Proof of Plaintiffs' claims will also prove the claims of the class without the need for separate or individualized proceedings;

(b)     Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from Defendant's records and will not require individualized or separate inquiries or proceedings;

(c)     Defendant has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

(d)     The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e)     This case is inherently manageable as a class action in that:

(i)     Defendant identified persons to receive the fax transmissions and it is believed that Defendant's and/or Defendant's agents' business records will enable Plaintiffs to readily identify class members and establish liability and damages;

(ii)     Liability and damages can be established for Plaintiffs and the class with the same common proofs;

(iii)     Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv)     A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

(v)     A class action will contribute to uniformity of decisions concerning Defendant's practices; and

(vi)     As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

## Claim for Relief for Violation of the TCPA, 47 U.S.C. § 227 *et seq.*

31.     Plaintiffs bring this case on behalf of themselves and a class of similarly-situated persons.

32.     The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C).

33.     The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

34.     **Opt-Out Notice Requirements.** The TCPA as amended by the JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

(1)     A statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

(2)     A statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

(3)     A statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

(4)     The opt-out language must be conspicuous.

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order, 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon consumers and businesses, giving them the right, and means, to stop unwanted fax advertisements.

35.     **2006 FCC Report and Order.** The TCPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the TCPA, including the TCPA's Opt-Out Notice Requirements and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

A.     The definition of, and the requirements for, an established business relationship (EBR) for purposes of the first of the three prongs of an exemption to liability under § (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 8-12 and 17-20);

B.      The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under § (b)(1)(C)(ii) of the Act, and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 13-16); and

C.      The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under § (b)(1)(C)(iii) of the Act, and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 24-34).

As a result thereof, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements cannot claim the exemption from liability contained in § (b)(C)(1) of the Act.

36.     **The Faxes**. On or about April 2, 2020, April 3, 2020, April 9, 2020, July 7, 2020, and July 25, 2020, Defendant sent the Faxes via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and facsimile machines of Plaintiffs and members of the Plaintiffs Class. The Faxes constituted advertisements under the Act and the regulations implementing the Act. Defendant failed to comply with the Opt-Out Requirements in connection with the Faxes. The Faxes were transmitted to persons or entities without their prior express invitation or permission and Defendant is precluded from sustaining the EBR safe harbor with Plaintiffs and other members of the class, because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendant violated the TCPA and the regulations promulgated thereunder by sending the Faxes via facsimile transmission to Plaintiffs and

members of the Class. Plaintiffs seek to certify a class which includes these Faxes and all others sent during the four years prior to the filing of this case through the present.

37. **Defendant's Other Violations.** Plaintiffs are informed and believe, and upon such information and belief aver, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiffs Class other faxes that constitute advertisements under the TCPA and its implementing regulations that were transmitted to persons or entities without their prior express invitation or permission and without complying with the Opt-Out Notice Requirements. By virtue thereof, Defendant violated the TCPA and the regulations promulgated thereunder. Plaintiffs are informed and believe, and upon such information and belief aver, that Defendant may be continuing to send unsolicited advertisements via facsimile transmission in violation of the TCPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

38. The TCPA provides a private right of action to bring this action on behalf of Plaintiffs and the Plaintiffs Class to redress Defendant's violations of the Act and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

39. Although the TCPA is a strict liability statute, Defendant is liable to Plaintiffs and the other class members even if its actions were only negligent.

40. Defendant knew or should have known that (a) Plaintiffs and the other class members had not given prior express invitation or permission for Defendant or anybody else to fax advertisements promoting goods or services to be bought or sold; (b) Defendant transmitted

advertisements; and (c) the Faxes and other faxes sent by Defendant did not contain the required Opt-Out Notice.

41.     Defendant's actions caused damages to Plaintiffs and the other class members. Receiving Defendant's junk faxes caused Plaintiffs and the other recipients to lose paper and toner consumed in the printing of Defendant's faxes. Moreover, Defendant's faxes occupied Plaintiffs' and the other class members' telephone lines and fax machines. Defendant's faxes cost Plaintiffs and the other class members time, as Plaintiffs and the other class members and their employees wasted their time receiving, reviewing, and routing Defendant's unauthorized faxes. That time otherwise would have been spent on Plaintiffs' and the other class members' business or personal activities.  Defendant's faxes intruded into Plaintiffs' and other class members' seclusion and violated their right to privacy, including their interests in being left alone.  Finally, the injury and property damage sustained by Plaintiffs and the other class members from the sending of Defendant's advertisements occurred outside of Defendant's premises.

WHEREFORE, Plaintiffs, OLD TOWN PIZZA OF LOMBARD, INC. and MEDICAL & CHIROPRACTIC CLINIC, INC., individually and on behalf of all others similarly situated, demand judgment in their favor and against Defendant, MP BUSINESS DOCTORS LLC a/k/a MP FACE MASK, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representative of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.     That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and that the Court award

treble damages of $1,500.00 if the predicated acts constituting the violations are deemed "willful

or knowing";

   C.  That Court enjoin Defendant from additional violations; and

   D.  That the Court award pre-judgment interest, costs, and such further relief as the

Court may deem just and proper.

            Respectfully submitted,

            OLD TOWN PIZZA OF LOMBARD, INC. and
            MEDICAL & CHIROPRACTIC CLINIC, INC.,
            individually and as the representatives of a class of
            similarly-situated persons

            By: /s/ Ryan M. Kelly
            Ryan M. Kelly
            ANDERSON + WANCA
            3701 Algonquin Road, Suite 500
            Rolling Meadows, IL  60008
            Telephone:  847-368-1500
            Fax:  847-368-1501
            rkelly@andersonwanca.com